**Elias NIEVES, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, and Pennsylvania Department of Corrections and Department of Corrections Community Corrections Center, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 4, 2009.

Decided Oct. 15, 2009.

Reargument Denied Nov. 16, 2009.

---

Elias Nieves, petitioner, pro se.

Debra Sue Rand, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondent, Pennsylvania Department of Corrections.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Elias Nieves (Nieves) has filed a petition for review (Petition) in this court's original jurisdiction against the Pennsylvania Board of Probation and Parole (Board), the Department of Corrections and the Department of Corrections Community Corrections Center (CCC) (together, the Department). The Department has filed preliminary objections in the nature of a demurrer. We sustain the demurrer and dismiss the Petition with respect to the Department.

Nieves is a convicted sex offender incarcerated at the State Correctional Institution in Coal Township (SCI–Coal). On May 30, 2008, the Board issued a decision to parole Nieves to a CCC for a minimum of nine months upon his completion of a sex offender program. (Petition, ex. B.) As a result, the Department placed Nieves on a waiting list for one of fifty beds reserved for sex offenders in the Department's CCCs.

On February 2, 2009, following the adoption of new procedures for release of violent offenders, the Board modified its decision to read, "You are paroled upon completion of [a] sex offender program to a specialized CCC with violence prevention programming. . . ." (Petition, ex. C.) Because Nieves was considered a violent offender, the Department placed Nieves on a waiting list for one of ten beds reserved

for violent sex offenders in the Department's specialized CCCs.

■ On March 5, 2009, Nieves filed his Petition with this court. Nieves argues that the Department has an obligation to comply with the Board's parole decision and to issue a CCC bed date to Nieves without regard to the crime that he committed. Nieves seeks an order: (1) declaring that the Department's issuance of CCC bed dates based on an inmate's crime is unconstitutional, violating an inmate's due process and *ex post facto* rights; (2) enjoining the practice of assigning CCC beds based on an inmate's crime; (3) directing the Department to serve Nieves with copies of the CCC bed waiting lists for the periods before and after creation of specialized CCCs; (4) directing the Department to issue a bed date for Nieves; (5) directing the Department to release Nieves upon receipt of a Board parole release order; and (6) enjoining the Department from engaging in retaliatory action against him in the issuance of a bed date and in treatment towards him after his release to a CCC. The Department has filed preliminary objections in the nature of a demurrer, which are now before this court.[1]

■ Initially, the Department asks this court to take judicial notice that the Governor imposed a temporary moratorium on parole releases pending a review of the paroling of violent offenders and that the subsequent review included John S. Goldkamp's December 1, 2008, report entitled, "Restoring Parole and Related Processing for Categories of Violent State Prisoners: Findings and Recommendations II" (Goldkamp Report). The Department attached a copy of the Goldkamp Report, which also is available on the Department's official web site. This court has taken judicial notice of information on the Department's web site, as well as publicized political facts. *Figueroa v. Pennsylvania Board of Probation and Parole*, 900 A.2d 949 (Pa. Cmwlth.2006); *Sherman v. Kaiser*, 664 A.2d 221 (Pa.Cmwlth.1995). Thus, we take judicial notice of the Governor's temporary moratorium on parole and the related Goldkamp Report.

Relevant here, the Goldkamp Report recommends a process to identify the most violent offenders, the creation of specialized CCCs to deal with them and the development of intensive programming for their first ninety days of release from prison. (Goldkamp Report at 8–10.) In implementing these recommendations, then, the Board and Department have placed Nieves in the most violent offender category and determined that he must undergo intensive programming at one of the specialized CCCs.

■ Turning to the demurrer, the Department objects to Nieves' request for a declaration that the new CCC procedures, particularly the assignment of CCC beds based on the inmate's crime, violate his due process rights. In *Johnson v. Pennsylvania Board of Probation and Parole*, 110 Pa.Cmwlth. 142, 532 A.2d 50 (1987), this court stated that an inmate does not have a protected liberty interest, or due process rights, in parole until the inmate is actually released on parole. Thus, Nieves does not have a protected liberty interest, or due process rights, in a CCC bed for parolees until he is actually released on parole. Because Nieves has not actually

1. Preliminary objections in the nature of a demurrer admit all well-pleaded material facts and any inferences reasonably deduced from them, but not legal conclusions. *Lennitt v. Department of Corrections,* 964 A.2d 37 (Pa. Cmwlth.2008). A demurrer will be sustained only in cases that are clear and free from doubt and only where it appears with certainty that the law permits no recovery under the allegations pleaded. *Id.*

been released on parole, he cannot challenge the new CCC bed procedure on due process grounds. Accordingly, we sustain the Department's demurrer to this issue.

■ We next address whether the Department's implementation of the new CCC bed procedure for the most violent sex offenders violates Nieves' *ex post facto* rights. The Department points out that the federal and state constitutions prohibit *ex post facto* **laws,** and the Department's new CCC bed procedure is not a law. *See Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000) (considering whether a Georgia regulation violates a parolee's *ex post facto* rights); *Cimaszewski v. Board of Probation and Parole,* 582 Pa. 27, 868 A.2d 416 (2005) (considering whether statutory amendments violate a parolee's *ex post facto* rights). The Department is correct in this regard; thus, we sustain the demurrer to this issue.

The Department next objects to Nieves' request for an order enjoining the Department from assigning CCC beds based on an inmate's crime, contending that Nieves does not have a clear right to such relief. *See Harding v. Stickman,* 823 A.2d 1110 (Pa.Cmwlth.2003) (stating that to prevail in an action for injunction, a party must establish, *inter alia,* that the right to relief is clear). As indicated above, Nieves has not established that the CCC bed procedure violates his due process or *ex post facto* rights. Thus, we sustain the demurrer to this issue.

■ The Department also objects to Nieves' request in mandamus for an order directing the Department to provide him with copies of CCC bed waiting lists. Mandamus is an extraordinary writ available to compel performance of a ministerial duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant and the lack of any other adequate and appropriate remedy. *Lennitt v. Department of Corrections,* 964 A.2d 37 (Pa.Cmwlth.2008). Here, Nieves asserts that he has a clear legal right to the waiting lists pursuant to the act known as the Right–to–Know Law (Law).[2] However, to the extent that Nieves bases his request for the waiting lists on his right to know under the Law, mandamus does not apply because Nieves has a remedy he has not yet pursued, i.e., he has not made a right-to-know request.[3] Thus, we sustain the demurrer to this issue.

■ The Department further objects to Nieves' request in mandamus for a CCC bed date. The Department points out that, in his Petition, Nieves avers that the Board has informed him that he must have a home plan before he can receive a CCC bed date. (*See* Petition, ¶ 5.) However, Nieves points out that the Board's May 30th parole decision requires only that Nieves have an approved plan prior to his release from the CCC. (*See* Petition, ex. B.) Nevertheless, the regulation at 37 Pa. Code § 63.1 gives the Board legal authority to postpone a parole date until a satisfactory plan is arranged for the parolee and approved by the Board. Because the Board is now exercising this legal authority, the Department has no duty to provide Nieves a CCC bed date at this time. Thus, we sustain the demurrer to this issue.

■ The Department also objects that Nieves' request for an order directing his release to a CCC upon receipt of a

**2.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

**3.** If Nieves does not have a right to the waiting lists under the Law, then mandamus does not apply because Nieves does not have a clear right to relief.

Board release order is not ripe because the Board has not yet issued such an order and because this court must presume that the Department will comply with a Board release order. Ripeness is a concept premised on the notion that judicial machinery should be conserved for problems that are real and present or imminent, not squandered on problems that are abstract or hypothetical or remote. *Van Doren v. Mazurkiewicz*, 695 A.2d 967 (Pa.Cmwlth. 1997). Because the Board has not issued a release order and because it is only speculation that the Department will not comply, this matter is not ripe. Thus, we sustain the demurrer to this issue.

 Finally, the Department objects to Nieves' request for an order enjoining the Department from retaliating against him, asserting that Nieves is only speculating that the Department might retaliate against him for the filing of this lawsuit or for any other reason. Nieves responds that the Department is now retaliating against him for being a convicted sex offender by placing him on the CCC bed waiting list for the most violent offenders. However, to state a retaliation claim, a petitioner must plead facts to show that he was engaged in constitutionally protected activity, that he was the subject of an adverse action by prison officials and that the protected activity was a substantial or motivating factor for the adverse action. *Yount v. Department of Corrections*, 600 Pa. 418, 966 A.2d 1115 (2009). To the extent Nieves alleges that the Department is retaliating against him for being a convicted sex offender, being a convicted sex offender is not an activity with constitutional protection. Thus, we sustain the demurrer to this issue.

Having sustained the Department's demurrer to all issues, we dismiss the Petition with respect to the Department.

*ORDER*

AND NOW, this 15th day of October, 2009, the preliminary objections, filed by the Department of Corrections and the Department of Corrections Community Corrections Center (together, the Department), are hereby sustained. The petition for review filed by Elias Nieves is dismissed with respect to the Department.